Charles Mumford v. Commissioner.
Mumford v. Commissioner
Docket No. 21308.
United States Tax Court
1950 Tax Ct. Memo LEXIS 200; 9 T.C.M. (CCH) 405; T.C.M. (RIA) 50123; May 22, 1950
*200 L. Paul Ewell, Esq., Pocomoke City, Md., and Philip C. Herr, Esq., 1701 Arch St., Philadelphia 3, Pa., for the petitioner. James C. Maddox, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax for 1943, 1944 and 1945 in the amounts of $42,627.63, $24,850.42 and $78,383.16. The year 1942 is also involved by reason of the forgiveness feature of the Current Tax Payment Act of 1943. The only issue for decision is whether the Commissioner erred in determining that the petitioner's brothers, Isaiah C., William H., Warren H., and Dale L. Mumford, were not recognizable as partners for tax purposes and that the partnership income credited to them in accordance with an oral partnership agreement is taxable to the petitioner. Findings of Fact The petitioner and his four brothers are engaged in the sheet metal business in Selbyville, Delaware. The petitioner's income tax returns for the years 1942 to 1945, inclusive, were filed with the collector of internal revenue for the district of Delaware. The petitioner started in the sheet metal business sometime in 1932 or 1933 as a *201 sole proprietor trading after 1936 as the "Mumford Sheet Metal Works." The business has always manufactured and sold poultry equipment and done general sheet metal repair work. The Mumford Sheet Metal Works (hereafter called the Metal Works), originally consisted of a work shop and adjoining office. This shop has been used for repair work since 1938 when a manufacturing plant was built about a mile away. The petitioner employed Isaiah on a fixed salary at or about the time the business was started. Isaiah learned the sheet metal trade from the petitioner and by 1938 was in full charge of the repair shop where he supervised the work of 3 or 4 employees. He has been associated with the business ever since it was started and is still foreman of the repair shop. William and Warren were both employed on a full time basis by the petitioner when they graduated from high school in 1934 and 1938, respectively. Both had worked for the petitioner during vacations and on Saturdays prior to their graduation from high school. Dale left school sometime in 1940 when he was 15 years of age and he too went to work for the petitioner. The petitioner promised Isaiah, William and Warren sometime *202 in 1938 or 1939 that if they would stay with the business, work hard and learn the trade he would eventually see that they all shared in the profits of the business. A similar promise was made to Dale when he came to work for the petitioner in 1940. Warren was installed as supervisor of the new plant at the time of its construction in 1938 and has continued in that capacity up to the present time, except for the period June 6, 1944 to June 5, 1946, when he was in the Armed Forces. His duties during the years here in question entailed the supervision of anywhere from 5 to 50 employees. The number of personnel in the plant varied according to the availability of materials and the frequency of labor disputes. He also designed and built production equipment used in the plant. William worked in the repair shop learning the trade from Isaiah and the petitioner until 1938 when he moved out to the new manufacturing plant. There he worked under Warren, and at the present time is in charge of the soldering and welding departments of the business. He developed, with Warren's help, a new soldering device in 1941 which materially reduced the manhours previously required in the soldering phase *203 of the business. This device also served to lessen William's duties and responsibilities and he was thereafter given the additional job of inspecting the finished products at the plant. This soldering process, as originally developed, is still in use at the present time. William has been associated with the Metal Works continuously since 1934, except for the period May 1, 1942 to October 16, 1945, when he was in the Armed Forces. Combat fatigue prevented his returning to work until January, 1946. Dale went to work for the business in 1940 as assistant to Warren at the manufacturing plant. His duties included setting up the machines and adjusting dies, work which the ordinary employees were unable to perform. He considered entering the Merchant Marine in 1941 in order to realize the high wages then being paid by that service, but was persuaded by the petitioner to remain with the business where his prospects were brighter. He has been with the Metal Works continously since 1940 except for a period in the Armed Forces from October 30, 1943 to November 1, 1945. The petitioner has always served as general manager and directing head of the business. He spent most of each working day *204 at the manufacturing plant and visited the repair shop only occasionally. He has never received a salary from the business. His brothers' salaries per day at the end of the years 1937 to 1941, inclusive, were as follows: Year
Isaiah
William
Warren
Dale
1937
$3.00
$2.00
$2.00
1938
3.00
2.50
2.50
1939
3.00
3.00
3.00
1940
4.09
4.09
4.09
$2.00
1941
4.50
4.54
4.54
3.86
The petitioner met with his four brothers sometime in November or December, 1941 and informed them that as of January 1, 1942, there would be a sharing of the profits. He stated that he wished 40 per cent for himself and suggested that Isaiah get 25 per cent, William and Warren 12 1/2 per cent each, and Dale 10 per cent. Isaiah, however, felt that his own share should be reduced to 20 per cent and those of William and Warren increased to 15 per cent each. The petitioner and his four brothers then orally agreed to form a partnership for a period of three years, commencing January 1, 1942, and to divide the profits on the following basis: The petitioner, 40 per cent; Isaiah, 20 per cent; William and Warren, 15 per cent each; and Dale, 10 per cent. The brothers understood *205 that the division of profits was based upon experience and length of service. The partnership agreement of 1941 was an oral arrangement entered into without benefit of legal advice. It was not conceived for tax-saving purposes. It was further agreed between the petitioner and his brothers at the time the partnership agreement was entered into that if the business succeeded, there would be an equal distribution of the profits for the year 1945 and subsequent years. They also agreed that if any of them were drafted into the Armed Forces, that brother's salary would cease but his participation in the profits would continue during his absence. They all understood that they would have to share any losses in the same proportion as they shared profits. The petitioner owned all of the physical assets of the business from the time it was started in 1933 up to and including the taxable years involved herein. A signature card was delivered to the Bishopville Bank, Bishopville, Maryland, by the petitioner on or about January 3, 1942. This card bore the signatures of the petitioner and his four brothers and authorized all of them to sign checks against the account of the Metal Works. The *206 petitioner and Isaiah were the only ones authorized to draw on the account prior to that time. Any one of the five partners could thereafter withdraw the full balance in the account. The petitioner also informed the bank cashier of the partnership arrangement on or about January 3, 1943, and the cashier had a memorandum prepared showing each of the five partners' proportionate interest in the business. Warren borrowed $3,500 from the Bishopville Bank on January 15, 1942, his note being endorsed by the petitioner. Isaiah and his wife together borrowed $3,500 and the petitioner a like amount from the same bank on March 14, 1942. The note given by Isaiah and his wife was not endorsed by the petitioner. These sums were used by the Metal Works to finance its normal operations. The Metal Works maintained separate ledger accounts for each of the five partners for the years 1942 to 1949 inclusive. Each of the brothers made substantial cash withdrawals from their respective accounts and had a number of personal bills paid by the firm. Their purchases of bonds were also charged to their accounts. All such withdrawals and payments were debited to their accounts and never went directly or *207 indirectly to or for the benefit of the petitioner. All five partners examined their own ledger accounts from time to time, knew of the debits and credits entered therein, and occasionally examined their brothers' accounts, although none of them understood bookkeeping procedure. Checks drawn on the bank account of the Mumford Sheet Metal Works were, with few exceptions, signed by the petitioner or Isaiah. Isaiah signed a great many because he was the most available partner. Most of these bearing Isaiah's signature were signed "Charles Mumford per Isaiah C. Mumford". The profits of the Metal Works for the years 1942, 1943 and 1944 were credited to the accounts of the five partners proportionately in accordance with the oral partnership agreement of 1941. The profits for 1945 were credited in accordance with the agreement of 1944, each partner receiving a one-fifth share. The bank account of the Metal Works was charged in April, 1943, and in September, 1943, with the amounts $40,700 and $33,300, respectively, representing the cost of United States Savings Bonds, Series F, in the principal amounts of $55,000 and $45,000. Those bonds were registered as follows: Issued
Issued
April, 1943
Sept. 1943
Total
Registered in name of
Cost
Par
Cost
Par
Cost
Par
Charles Mumford OR Isaiah Mumford
$11,100
$15,000
$11,100
$15,000
$22,200
$30,000
Charles Mumford OR Warren Mumford
11,100
15,000
7,400
10,000
18,500
25,000
Charles Mumford OR William Mumford
11,100
15,000
7,400
10,000
18,500
25,000
Charles Mumford OR Dale Mumford
7,400
10,000
7,400
10,000
14,800
20,000
$40,700
$55,000
$33,300
$45,000
$74,000
$100,000
*208 Those bonds were purchased as assets of the business and were kept in the office safe. Each brother was entitled to withdraw the balance in his capital account at any time and he could take his money either in cash or in Series F bonds. The total of the cash and Series F bonds on hand at the end of each year was sufficient to pay in full all of the balances due the petitioners' four brothers. The petitioner informed Isaiah and Dale sometime in December, 1944, that the five partners would share the profits of the business on an equal basis as of January 1, 1945. William and Warren were both overseas with the Armed Forces at that time, and so the petitioner wrote each a letter explaining the new arrangement for sharing the profits. This arrangement was put into effect and has been followed ever since. Each partner believed that in the event of his death the balance in his capital account would go to his heirs. Isaiah, William and Dale understood that their interests in the profits of the business would continue even after their deaths for the duration of the first three-year partnership. The five partners made a practice of getting together after business hours to discuss the day's *209 work, plan for the following day and order whatever materials were needed. The petitioner, Isaiah, William, Warren and Dale filed individual income tax returns for 1942 reporting their respective salaries and share of the profits as follows: Share of
Salary
Profits
Total
Charles
$25,193.70
$25,193.70
Isaiah
$1,475.66
12,596.85
14,072.51
William
454.08
9,447.64
9,901.72
Warren
1,475.66
9,447.64
10,923.30
Dale
1,255.28
6,298.43
7,553.71
A partnership return, form 1065, for 1942 was prepared by the attorney for the Mumford Sheet Metal Works. The attorney placed the return in an envelope with stamps attached and deposited the envelope in the Post Office at either Selbyville or Pocomoke City, Delaware, on or before March 15, 1943. The records produced by the Commissioner do not include this return. Any failure on the part of the petitioner to file the return was due to reasonable cause and was not due to wilful neglect. The petitioner, Isaiah, William, Warren and Dale filed individual income tax returns for 1943 reporting their respective salaries and share of the profits as follows: Share of
Salary
Profits
Total
Charles
$17,027.72
$17,027.72
Isaiah
$1,475.66
8,513.86
9,989.62
William
6,385.40
6,385.40
Warren
1,475.66
6,385.39
7,861.05
Dale
1,017.36
4,256.93
5,274.29
*210 The petitioner filed an individual income tax return for 1944 showing his own income as $19,004.84 and the net profit of the Metal Works as $47,512.09. A separate schedule attached to the same return lists the individual partners' salaries and share of the net profits as follows: 1944
Mumford's Sheet Metal Works
Selbyville, Delaware
Name
Salary
Profit
Total
Charles Mumford
40%
$19,004.84
$19,004.84
Isaiah Mumford
$1,475.66
20%
9,502.42
10,978.08
Warren Mumford
624.36
15%
7,126.81
7,751.17
William Mumford
15%
7,126.81
7,126.81
Dale Mumford
10%
4,751.21
4,751.21
$47,512.09
$49,612.11
Isaiah, William, Warren and Dale filed individual income tax returns for 1944 reporting their respective salaries and share of the profits as follows: Share of
Salary
Profits
Total
Isaiah
$1,475.76
$9,502.42
$10,978.18
William
7,126.81
7,126.81
Warren
624.36
7,126.81
7,751.17
Dale
4,751.21
4,751.21
The petitioner filed an individual income tax return for 1945 reporting his own income as $23,317.09 and the net profit of the Metal Works as $115,248.45. A separate schedule attached *211 to the same return lists the individual partners' salaries and share of the profits as follows: 1945
Mumford's Sheet Metal Works
Selbyville, Delaware
Name
Salary
Profit
Total
Charles Mumford
20%
$ 23,049.69
$ 23,049.69
Isaiah Mumford
$1,475.76
20%
23,049.69
24,525.45
Warren Mumford
20%
23,049.69
23,049.69
William Mumford
20%
23,049.69
23,049.69
Dale Mumford
267.40
20%
23,049.69
23,317.09
$1,743.16
$115,248.45
$116,991.61
Note: Charles Mumford is the owner of the business but his brothers Isaiah Mumford, Warren Mumford. William Mumford and Dale Mumford have participated in the profits since the year 1942. Isaiah, Warren, William and Dale filed individual income tax returns for 1945 reporting their respective salaries and share of the profits as follows: Share of
Salary
Profits
Total
Isaiah
$1,475.76
$23,049.69
$24,525.45
William
23,049.69
23,049.69
Warren
23,049.69
23,049.69
Dale
267.40
23,049.69
23,317.09
The business occasionally needed extra capital, and at such times the amounts credited to the individual partners' accounts were used in the business. *212 The petitioner has a fifth brother, Ollie Mumford, who worked at times for the Metal Works, but has never been included as a partner. He also has a mother and father and two married sisters, none of whom have ever been partners or participated in the profits of the business. The petitioner did not include in his income for 1943, 1944 and 1945 any part of the share of the partnership income credited to Isaiah, William, Warren and Dale on the partnership books. The Commissioner determined that the partnership income credited in these years to Isaiah, William, Warren and Dale is taxable to the petitioner. The petitioner, Isaiah, William, Warren and Dale really and truly intended to join together for the purpose of carrying on the business as partners, and Isaiah, William, Warren and Dale are recognizable as partners for income tax purposes. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner tries to bring this case within such cases as , and , upon the theory that the petitioner merely made an assignment of income to his brothers. *213 He must, in order to do that, practically ignore all the facts in the record. The evidence shows that the petitioner and his four brothers actually had an oral partnership agreement, all were active in the business, all were responsible in part for the production of the income, all shared in varying degrees in the management and control of the business, all shared in the profits in accordance with their partnership agreement and each one reported his share of the earnings for tax purposes. These men were not skilled in the law but their agreement was sufficient for their purposes. There was no scheme to avoid taxes. The petitioner owned all of the physical plant and never intended to convey any part of that property to his brothers but his share of the profits was larger than any of the others and that may have been in part to compensate him for the use of his property. But however that may be, it is no justification for taxing all of the income of this partnership business to him. The evidence shows beyond doubt that the petitioner and his four brothers really and truly intended to join together for the purpose of carrying on the business and sharing in its profits or losses, *214 or both, as partners. Decision will be entered under Rule 50.